## The Inhabitants of RANDOLPH *versus* The Inhabitants of EASTON.

In an action by one town against another for the support of a pauper, who was the illegitimate son of a married woman, the plaintiff town having proved ner settlement to have been, originally, in the defendant town, it was *held*, that he burden of proof was on the defendant town, to show, that the husband had a settlement in some other town in the Commonwealth, and so, that her settlement was changed by her marriage, and not on the plaintiffs, to prove that the husband either had his settlement in the defendant town, or had no settlement in the Commonwealth (*Putnam J. dissenting.*)

ASSUMPSIT for supplies furnished by the plaintiffs to Stephen G. Dickerman and his wife and child, who had fallen into distress in the town of Randolph, and whose lawful settlement was alleged by the plaintiffs to be in the town of Easton.

The trial was in the Court of Common Pleas, before *Williams* J.

In order to prove that the settlement of S. G. Dickerman was in Easton, the plaintiffs proved that Ebenezer Dickerman, whose settlement was in Easton, was married to Parnel Bonney on the 8th of July, 1804 ; and it was admitted, that S. G. Dickerman, who was born in 1806 or 1807, was her chi d.

The defendants then proved, that Parnel Bonney was the daughter of Hopestill Randall ; that she was married to William Bonney 3d, on the 22d of April, 1792 ; and that Bonney was alive, and occasionally in Easton, after the war of 1812, in which he was enlisted as a soldier.

The defendants admitted, that Randall always had his settlement in Easton, and that Parnel once had a derivative settlement from her father.

The plaintiffs offered no evidence to prove, either that Bon ney had a settlement in Easton, or that he had no settlement in the Commonwealth.

The defendants contended, that the derivative settlement which Parnel once had from her father, was transferred by her marriage to Bonney, and followed his settlement ; and that the burden of proof was on the plaintiffs, to show, either that Bonney had a settlement in Easton, or that he had not a settlement in the Commonwealth.   But the judge instructed the

jury, that, in this posture of the evidence, the plaintiffs had proved a *primâ facie* case ; and that the burden of proof was on the defendants, to show that Bonney had a settlement in this Commonwealth in some other town than Easton.

The jury found a verdict for the plaintiffs ; and the defendants excepted to the instructions to the jury.

*Ames*, for the defendants, to the point, that the burden of proof in such case, was on the plaintiffs, cited *Wilmington* v. *Burlington*, 4 Pick. 174 ; *Foster* v. *Hall*, 12 Pick. 92 ; *Ross* v. *Hunter*, 4 T. R. 33.

*Metcalf* and *Prescott*, for the plaintiffs, cited *Rex* v. *Hensingham*, Caldecott, 206 ; *Rex* v. *Ryton*, ibid. 39 ; *Rex* v. *Edisore*, ibid. 371.

Shaw C. J. drew up the opinion of the Court. The action is brought for the support of Dickerman, a pauper. It appeared, that the pauper was the reputed son of Ebenezer Dickerman and his wife Parnel, who were married a few years before the birth of the pauper. But it was further shown, that previously to this marriage, the mother had married one Bonney, who was proved to be living at the time of the second marriage. Such first husband being alive at the time of the second marriage, the latter was *ipso facto* void, and the children of such void marriage were therefore illegitimate.

It was intimated in the course of the argument, that notwithstanding the second marriage with Dickerman, the pauper might, by presumption of law, have been the child of Bonney, and therefore a legitimate child. It is true that a child born in wedlock, shall be presumed to be the child of the husband ; but it is a presumption of fact, which may be rebutted by proof of non-access ; it was therefore a question of fact, which should have been, and we are to presume was, left to the jury, and that they found that the pauper was the child of the second and void marriage, and so was illegitimate. The bill of exceptions seems to be framed upon that assumption.

In order to ascertain what the legal obligations of the towns respectively were, and to show what was the case in which the one or the other was legally liable, it is necessary to look at the law which creates and regulates those obligations.

By the statute law, as it then stood and now stands, a mar-

Randolph
*v.*
Easton.

*Oct. 30th.*

*Feb. term*
1840.

ried woman shall always follow and have the settlement of her husband, if he have any within the State ; otherwise, her own at the time of marriage, if she then had any, shall not be lost or suspended by the marriage. Revised Stat. *c.* 45, § 1, *art* 1.

Legitimate children shall follow and have the settlement of their father, if he have any within the State, otherwise they shall follow and have the settlement of their mother, if she have any. *Ibid. art.* 2.

Illegitimate children shall follow and have the settlement of their mother at the time of their birth, if she then have any within the State. *Ibid. art.* 3.

With these rules in view, it is necessary to see what was the posture of the evidence, when the direction in question was given.

The Court are of opinion, that it was wholly immaterial from which side the proof came ; the rights of the parties were to be determined by all the competent proof in the cause, without considering by which party it was introduced.

Had the marriage of Dickerman with the mother of the pauper been a valid one, he, being legitimate, would then have taken the settlement of his father, which was in Easton. But that marriage being void, *ipso facto*, without any decree of divorce, the son was of course illegitimate. He would then take the settlement of his mother. The evidence then showed, that she had a derivative settlement in Easton, from her father. This settlement she retained, unless she had changed it by acquiring another. It was contended by the defendants, that she had acquired another by marrying Bonney. But, by the first article above cited, a married woman shall have the settlement of her husband, if he have any ; otherwise, she shall retain the settlement which she had at the time of the marriage. In order, therefore, that the marriage of a woman may change her settlement, it must be shown, that she has married a man having a settlement within the State. In other words, it was incumbent on the defendants, after it had been proved that she had a derivative settlement in Easton, to prove two facts, first, that she married, and, secondly, that Bonney had a settlement in some town in the Commonwealth other

than Easton. Without the latter fact, they have not proved a
change in her settlement, by proving her marriage. The
Court are, therefore, of opinion, that the direction was right,
and that the burden of proof was upon the defendants to
prove, that Bonney had a settlement in some other town, with-
out which proof the settlement was fixed in Easton.

Randolph
v.
Easton.

It was contended in the argument, that this case must be
governed by that of *Wilmington* v. *Burlington*, 4 Pick. 174,
in which it was held, that the burden of proof was upon the
plaintiffs, to prove that John Taylor, the father of the pauper,
had no settlement in the Commonwealth ; and this is supposed
to be analogous. But we think the decision of the present
case is not only consistent with the case cited, but is support-
ed by it. The case is very shortly reported, and it is neces-
sary to examine it with some care. The question was of the
settlement of Jonathan Taylor, who had no settlement in his
own right. He was the legitimate son of John Taylor and
his wife. Of course he took a derivative settlement from his
father, if he had any ; otherwise, from his mother. The evi-
dence was, that his mother once had a settlement in Burling-
ton. The defendants then undertook to show, that the father,
John Taylor, had a settlement in Reading or Medford, by
birth, which, as the law then stood, gave a settlement, though
the law was afterwards altered in that respect. Exceptions
were taken by the plaintiffs, to the sufficiency of that proof,
and the directions of the Court respecting it. After giving an
opinion upon these exceptions, the Court proceed to say, that
the burden of proof seemed to have been mistaken at the trial,
that the burden really was upon the plaintiffs, to prove that
John Taylor, the father of the pauper, had no settlement in
the Commonwealth ; but at the trial, the defendants had un-
dertaken to prove the contrary. What were the obvious
grounds of this decision ? The object was not to show that
the mother of the pauper had lost her settlement in Burlington
by her marriage with John Taylor ; if it had been, the defend-
ants must have proved two things, that she had married, and
married a settled inhabitant. The burden of proof would have
been upon them, to show that John Taylor had a settlement.
But the object of the plaintiffs was to prove that the pauper

21 *

Randolph
*v.*
Easton.

had a derivative settlement from his mother. But, by the stat ute, a legitimate child has the settlement of his father, if he has any within the · State ; otherwise, of his mother. To bring their case within this provision of law, the plaintiffs must show, first, that the father had no settlement in the State, and secondly, that the mother had a settlement in Burlington ; and without proving both these facts, their case was not within the statute.

The obvious difference between the two cases is this ; in the present case, the question is upon the derivative settlement of an illegitimate child, who takes a settlement immediately from his mother ; in the case cited, the question was upon the settlement of a legitimate child, who takes the settlement of his mother, only provisionally, in case his father has none in the State. We think, therefore, that the present case does in no respect conflict with the authority of the case cited.

PUTNAM J. *dissenting*. The plaintiffs allege, that the inhabitants of Easton are liable to support the pauper, and the defendant town denies it. The general burden of proof is certainly on the plaintiffs. If they leave the case doubtful, they ought not to get rid of supporting the pauper, and throw that responsibility upon the defendants.

It was proved, that the pauper was the illegitimate child of Parnel Bonney, who, when the child was born, was the lawful wife of one William Bonney, who was living in the Commonwealth long after the birth of the child, but was not the father of the child.

By the *St.* 1793, *c.* 34, § 2, it is provided, first, that a married woman shall always follow and have the settlement of her husband, if he have any within this Commonwealth ; otherwise, her own at the time of marriage if she then had any, shall not be lost or suspended by the marriage : Secondly, that legitimate children shall follow and have the settlement of their father, if he shall have any within this Commonwealth, until they gain a settlement of their own ; but that if he shall have none, they shall, in like manner, follow and have the settlement of their mother, if she shall have any : Thirdly, that illegitimate children shall follow and have the settlement of their mother at the time of their birth, if she shall then have

any within the Commonwealth ; but that neither legitimate nor illegitimate children shall gain a settlement by birth in the places where they may be born, if neither of their parents shall then have any settlement there.

The pauper was an illegitimate child, and is to follow and have the settlement which his mother had at the time of his birth. Where was that ? Certainly in the place where her husband was settled, if he had any settlement ; for she was the lawful wife of W. Bonney, when she gave birth to the illegitimate pauper. She had a settlement in Easton when she married Bonney. Now it is not proved whether Bonney had or had not any settlement in the Commonwealth. And the question is, whether the plaintiffs, or the defendants, are to bear the burden of the proof of that matter. If Bonney had no settlement in the State, then the settlement of his wife continued in Easton, the defendant town. If he had a settlement in the State, then his wife lost her settlement in Easton, and acquired that which her husband, Bonney, had at the time of his marriage.

On the part of the plaintiffs it is contended, that it is sufficient for them to prove, that the settlement of the mother was once in Easton, and that it is to be presumed to have continued there, unless the inhabitants of Easton shall prove that she has lost that, and acquired some other settlement in the State. And on the part of the defendants, it is contended, that the general burden of proof rests on the plaintiffs (who now have the pauper) to prove that his settlement is in the defendant town. And that is certainly so. The case is left thus. The pauper, by law, has the settlement of his mother at the time of his birth. The question then is, where was the mother then settled. It is left doubtful. Her original settlement in Easton continued, or it had been lost and a new one acquired by her marriage with Bonney ; but which, is uncertain. And it would seem, that the plaintiffs, leaving their case in doubt on the main subject, cannot recover.

This reasoning would seem to me to be satisfactory, independently of any adjudication. But the defendants have cited the case of *Wilmington* v. *Burlington*, 4 Pick. 174, as strongly supporting their views. It was there held, that in an

Randolph
v.
Easton.

action for the support of a pauper deriving his settlement from that of his father, or of his mother, brought against the town where the mother had her settlement, the burden of proof is not on the defendants, to show that the father had a settlement in some other town, but on the plaintiffs, to show (by proving where he did belong) that he had not a settlement in the Commonwealth.

The facts in that case were, that Jonathan Taylor, the pauper, was the legitimate son of John Taylor, who was lawfully married to the mother of the pauper, and her settlement, at the time of their marriage, was in Burlington, the defendant town. And the court were inclined to the opinion, that the burden of proof was mistaken at the trial; because the Court held, that it was incumbent on the plaintiffs to prove, that the father had not a settlement in the Commonwealth ; for though that was a negative in appearance, yet it would be proved by showing where he did belong. Otherwise, the plaintiffs would always rest their case by proving, that the mother had her settlement in the defendant town.

It is said, however, for the defendants, that the case at bar differs materially from the one cited, in this, viz., that in the case cited, the pauper was a legitimate, and that the pauper in the case at bar is an illegitimate child.

I cannot but think that this is a distinction without a difference affecting the burden of proof in the case. The question was, where did the parent belong from whom the pauper derived his settlement. The mother belonged to Burlington, at the time she was lawfully married to John Taylor; and if he had a settlement in the Commonwealth she took it ; if not, then she retained her original settlement in Burlington. And so in the case at bar, the mother was settled in Easton, at the time when she was lawfully married to W. Bonney ; and she took his settlement if he had any in the Commonwealth , if not, she retained her original settlement in Easton. The Court held, in the case cited, that the plaintiffs were bound to show, whether or not the husband had a settlement in the State. If he had, then his settlement became the settlement of his wife ; and it would follow, as the law has stood since 1793, that her children, which should be born afterwards, legitimate or ille-

Randolph<br>v.<br>Easton.

gitimate, would take the same settlement, while it continued. If they were legitimate, they would derive their settlement from their father; if illegitimate, they would derive it from their mother. The legitimacy or illegitimacy of the children does not affect the settlement which the wife acquired by her marriage. Suppose, that three years after the lawful marriage of Bonney and his wife, she had a legitimate child, and that the husband afterwards went to sea upon a whaling voyage, and was absent three years, and that in sixteen months after he sailed, his wife had a bastard ; and suppose that the husband, wife and her children became paupers, and were relieved in some other town than that in which he was settled with his wife. Now it is clear, that the legitimate child would derive his settlement in the place where the father belonged, and the illegitimate child would derive his settlement from his mother in the *same place*, *the settlement of the husband and of the wife being in the same place*. The adultery of the wife would not change her settlement. She was not, by her crimes, remitted to her original settlement. So that the question of legitimacy or illegitimacy would not at all affect the liability of the defendants for the support of her children. According to the case cited, the plaintiffs, in order to charge the town where the original settlement of the mother was, would be held to show, that she did not acquire any settlement by her marriage with Bonney, by reason of his not having one himself in the Commonwealth. But if, as in the case supposed, Bonney had a lawful settlement at the time of his marriage, it would be communicated to his wife ; his settlement would become her settlement ; her lawful children would be there settled derivatively from her husband ; and her illegitimate children would take her settlement acquired by the marriage. But the plaintiffs, in the case at bar, in the first place, go to the original settlement of the mother, just as they did in the case cited. Whereas, in order to charge the town of her original settlement, they ought to have removed all doubt relating to her settlement, which might arise from her lawful marriage, and shown that no alteration of the original settlement was thereby made.

In the case cited, John Taylor was lawfully married to the mother of the pauper, who belonged to the defendant town.

VOL. XXIII.

Randolph
*v.*
Easton.

So in the case at bar, Bonney was lawfully married to the mother of the pauper. In the case cited, it was doubtful, whether or not John Taylor, the husband, had a settlement in the State ; and the Court held, that the plaintiffs were bound to clear away that doubt. So in the case at bar, it is doubtful whether Bonney, the husband, had a settlement in the State ; and I do not see why the plaintiffs should not clear away the doubt ; for if it should turn out that he had a settlement in any town, then the pauper must be supported in that town. Proving where the husband was settled, if within the State, established the settlement of the wife ; and wherever that is fixed, there the pauper is fixed ; there he is to be supported, legitimate or illegitimate. In that case the settlement was to be derived from the husband ; in this, it is to be derived from the wife. But to determine where her settlement was, when the child was born, it is just as necessary to show whether her husband had or had not any settlement in the State, as it was in the case cited. For the result in both cases would be the same. If John Taylor had no settlement in the State, the defendant town would be chargeable, because the mother of the pauper belonged there. And so here, if Bonney had no settlement in the State, the defendant town would be chargeable, because the mother of the pauper belonged there. But if John Taylor had a settlement, then the town wherein it was, must take the pauper ; and so here, if Bonney had, that place being the settlement of his wife, the mother, must support the pauper.

If the ruling in the case of *Wilmington* v. *Burlington*, is right, it would seem that the plaintiffs should remove the uncertainty whether or not the husband had a settlement in the Commonwealth.

Independently of that, perhaps, the case might be considered as a question, whether or not a *primâ facie* case was made out.

Certainty is the great object to be attained by judicial inquiries. Who is the mother of the pauper, is usually made certain. Was she lawfully married before the child was born ? If yea, where did her husband belong ? If his settlement was in any town in the State, in that town you certainly fix her settlement, and, of course, the settlement of her children.

her husband was not settled in the Commonwealth, then go to the settlement she had before her lawful marriage, and the matter in question will be established beyond doubt. But if you begin at the other end, and stop at the settlement of the mother, who had been legally married before the child was born, then the matter is left doubtful, whether at the time when the child was born, she continued to have her original settlement, or a settlement acquired by her marriage. And by reason, as well as by authority, the plaintiffs should take the burden of the proof of that matter.

*Exceptions overruled and the judgment of the Court of Common Pleas affirmed.*